UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SCOTT MARLETT,<br><br>Plaintiff,<br><br>v.<br><br>KELLY HARRINGTON, et al.,<br><br>Defendants. | CASE NO. 1:15-cv-01382-MJS (PC)<br><br>**ORDER DISMISSING COMPLAINT**<br><br>**(ECF No. 1)**<br><br>**FIRST AMENDED COMPLAINT DUE WITHIN THIRTY (30) DAYS** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. Her complaint is before the Court for screening. (ECF No. 1.)

**I.    SCREENING REQUIREMENT**

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**II.   PLEADING STANDARD**

Section 1983 "provides a cause of action for the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

III. **PLAINTIFF'S ALLEGATIONS**

Plaintiff is an inmate[1] at California Substance Abuse and Treatment Facility ("CSATF") in Corcoran, California. Plaintiff names as Defendants: Kelly Harrington, Director of Corrections at the California Department of Corrections and Rehabilitation ("CDCR"); Vincent Cullen, Assistant Deputy Director of CDCR; Jeffery Bears, Secretary of CDCR; Martin Hoshino, Undersecretary of CDCR; Stu Sherman, Warden of CSATF;

---

[1] The Court assumes, for the purposes of this screening order, that Plaintiff is a transgender inmate, and so it will refer to Plaintiff in the feminine gender. Plaintiff does not, however, specifically identify herself as such in the complaint. If she decides to file an amended complaint, Plaintiff is advised that she must set forth all elements of her claims, including her identification as a transgender inmate.

2

1  and Janelle Reynoso, Associate Warden of CSATF. Plaintiff seeks declaratory and
2  injunctive relief only.
3       Plaintiff's allegations may be summarized essentially as follows:
4       CDCR has instituted policies designating certain California prisons, including
5  CSATF, for the housing and treatment of transgender inmates. Plaintiff contends that
6  CSATF staff members arbitrarily place transgender inmates in housing assignments
7  without regard for their safety and welfare.
8       Transgender inmates are routinely housed with non-transgender prisoners,
9  exposing the transgender inmates to a greater risk of harm without furthering a
10 penological goal. Many of these non-transgender inmates, for example, attempt to
11 sexually coerce the transgender inmates or physically assault them. This practice of
12 routinely housing transgender inmates with non-transgender inmates violates the
13 national standards set forth in the Prison Rape Elimination Act of 2003.
14      If a transgender inmates refuses the housing assignment – either due to a
15 credible concern for her personal safety or incongruity with the potential housing inmate
16 – disciplinary action is taken and the transgender prison is placed in a more restrictive
17 housing unit, such as Administrative Segregation ("Ad-Seg") or the Security Housing Unit
18 ("SHU"), pending review by a Facility Captain who must authorize the release from Ad-
19 Seg or SHU. Correctional staff will generally leave transgender inmates in Ad-Seg or
20 SHU for long periods of time without regularly and meaningfully considering other, less
21 restrictive housing options.
22      Since non-transgender inmates are able to select and choose their housing
23 assignments without detriment, CSATF's treatment of transgender inmates violates
24 these inmates' equal protection rights. Additionally, CSATF are denying transgender
25 inmates humane conditions of confinement with deliberate indifference to their safety.
26
27
28

**IV.    ANALYSIS**

    **A.    Standing**

Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975). To have Article III standing, a plaintiff must plead and prove that he or she has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the United States Constitution. See Clapper v. Amnesty Int'l, 133 S. Ct. 1138, 1146 (2013) ("'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997))). To establish Article III standing, a plaintiff must establish: (1) injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that this injury is fairly traceable to the challenged action of the defendant; and (3) that this injury is redressable by a favorable ruling from the court. See Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010); Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000).

Plaintiff does not allege any facts from which one can determine whether she has standing to assert her claims. Plaintiff challenges the CSATF practice of routinely placing transgender inmates, without regard to their safety, in cells with non-transgender inmates, and of placing transgender inmates in Ad-Seg or SHU if they complain of the placement. Plaintiff, however, does not allege that she was housed with a non-transgender inmate upon transfer to CSATF, that she objected to the placement, that she was injured by a non-transgender inmate, or that she was placed in Ad-Seg or SHU for a long period of time following objection to the housing placement. Without such allegations, it is impossible for the Court to determine if Plaintiff has alleged any injury as a result of the challenged practices.

    **B.    Personal Liability**

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional

1  or other federal rights by persons acting under color of state law. Nurre v. Whitehead,
2  580 F.3d 1087, 1092 (9th Cir. 2009); Long v. County of Los Angeles, 442 F.3d 1178,
3  1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To state a
4  claim, Plaintiffs must demonstrate that each defendant personally participated in the
5  deprivation of his rights. Iqbal, 556 U.S. at 677; Simmons v. Navajo County, Ariz., 609
6  F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th
7  Cir. 2009); Jones, 297 F.3d at 934.

8  Under section 1983, liability may not be imposed on supervisory personnel for the
9  actions or omissions of their subordinates under the theory of respondeat superior. Iqbal,
10 556 U.S. at 677; Simmons, 609 F.3d at 1020-21; Ewing, 588 F.3d at 1235; Jones, 297
11 F.3d at 934. "A supervisor may be liable only if (1) he or she is personally involved in the
12 constitutional deprivation, or (2) there is 'a sufficient causal connection between the
13 supervisor's wrongful conduct and the constitutional violation." Crowley v. Bannister, 734
14 F.3d 967, 977 (9th Cir.2013) (citations omitted). Supervisors may be held liable where
15 they "participated in or directed the violations, or knew of the violations and failed to act
16 to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Corales v.
17 Bennett, 567 F.3d 554, 570 (9th Cir. 2009).

18 Plaintiff does not specify whether she is proceeding against the Defendants in
19 their individual or official capacities, or both. To the extent Plaintiff is asserting claims
20 against these Defendants in their personal capacities, she has failed to set forth any
21 allegations that any of the named Defendants were personally involved in the alleged
22 violation or that there was a causal connection between the supervisor's wrongful
23 conduct and the constitutional violation.

24 **C.    Official Capacity Claims**

25 Under Section 1983, plaintiff may also seek prospective injunctive relief against
26 defendant in his official capacity. See Thornton v. Brown, 757 F.3d 834, 839 (9th Cir.
27 2013) (citing cases). "Official-capacity suits ... generally represent only another way of
28

5

pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (citing, inter alia, Monell v. Dept. of Soc. Servs. of N.Y.C., 436 U.S. 658, 690 n.55 (1978)).

In an official-capacity action, a governmental entity may be liable under Section 1983 if it was the "moving force" behind the alleged violation of constitutional rights, based on the entity's "policy or custom." Graham, 473 U.S. at 166-67 (citations and internal quotation marks omitted). As the Ninth Circuit Court of Appeals explained in Hartmann v. CDCR, 707 F.3d 1114, 1127 (9th Cir. 2013):

> A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. See id.; Graham, 473 U.S. at 166. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief. See L.A. Cnty. v. Humphries, 562 U.S. 29 (2010); Hafer [v. Melo], 502 U.S. [21] at 25 [1991].

Assuming Plaintiff is able to establish standing, the Court finds that she has alleged the existence of a policy or custom that caused the violation of rights, as discussed infra. However, a defendant in a suit to enjoin an allegedly unconstitutional practice must be able to appropriately respond to court-ordered injunctive relief if the plaintiff prevails. Ex Parte Young, 209 U.S. 123, 157-61 (1908). Plaintiff's complaint fails to assert that any of the six named Defendants has the ability to appropriately respond to court-ordered injunctive relief.

### D.     The Prison Rape Elimination Act of 2003

Plaintiff invokes the Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601, as a basis for relief. It is clear, however, that the Prison Rape Elimination Act does not create a private right of action. Bell v. County of Los Angeles, 2008 WL 4375768 (C.D. Cal. 2008); Inscoe v. Yates. 2009 WL 3617810 (E.D. Cal. 2009). Rather, the Prison Rape

1  Elimination Act was enacted to study the problem of prison rape. Pirtle v. Hickman, 2005
2  WL 3359731 (D. Idaho 2005). Nothing in the Act suggests that it created a private right
3  of action, enforceable under section 1983. See Blessing v. Freestone, 520 U.S. 329,
4  340-41 (1997) (statutory provision gives rise to federal right enforceable under § 1983
5  where the statute "unambiguously imposed a binding obligation on the States" by using
6  "mandatory, rather than precatory, terms"). The Act in itself contains no private right of
7  action, nor does it create a right enforceable under Section 1983. Plaintiff thus fails to
8  state a federal section 1983 claim based on a violation of the Prison Rape Elimination
9  Act.

### E. Fourteenth Amendment Equal Protection Claim

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008). Discrimination on the basis of transgender status is subject to intermediate scrutiny. Norsworthy v. Beard, 87 F. Supp. 3d 1104, 1119 (N.D. Cal. 2015). See also SmithKline Beecham Corp. v. Abbott Labs., 740 F.3d 471, 481 (9th Cir. 2014) (holding that United States v. Windsor, ⎯⎯ U.S. ⎯⎯, 133 S. Ct. 2675 (2013) "requires that heightened scrutiny be applied to equal protection claims involving sexual orientation").

Plaintiff's complaint sufficiently alleges the existence of a practice that treats transgender inmates differently from the rest of the prison population. However, before the Court will require the Defendants to respond to the complaint, and before the merits of the claims can be reached, Plaintiff must allege facts showing her standing, as discussed above. Plaintiff will be given the opportunity to file an amended complaint to cure this defect.

### F.     Eighth Amendment Conditions of Confinement

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citations omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Id. (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff here alleges the existence of a practice of routinely placing transgender inmates in cells with non-transgender inmates, thereby exposing the former group to a risk of harm (although the nature and extent of that risk and the resulting harm, and the basis for alleging its likelihood of occurring, are not specified). But again, before the Court will require the Defendants to respond, Plaintiff must allege facts demonstrating that she has standing and address the other issues identified in this Order.

## V. **CONCLUSION AND ORDER**

The Court will grant Plaintiff an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff opts to amend, she must demonstrate that the alleged acts resulted in a deprivation of her constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of her rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiff should note that although she has been given the opportunity to amend, it is not for the purposes of adding new claims. George, 507 F.3d at 607. Plaintiff should carefully read this Screening Order and focus her efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. Within thirty (30) days from the service of this order, Plaintiff shall a first amended complaint curing the deficiencies identified by the Court in this order;

9

2. The Clerk's Office shall send Plaintiff (a) a blank civil rights complaint form and (b) a copy of her complaint, filed September 10, 2015;

3. If Plaintiff fails to file a first amended complaint, the Court will dismiss this action, with prejudice, for failure to comply with a court order and failure to prosecute, subject to the "three strikes" provision set forth in 28 U.S.C. § 1915(g). Coleman v. Tollefson, 135 S. Ct. 1759, 1761 (2015).

IT IS SO ORDERED.

Dated:   October 15, 2015          /s/ *Michael J. Seng*
                                   UNITED STATES MAGISTRATE JUDGE